Affirmed by published opinion. Judge DUNCAN wrote the opinion, in which Judge MOTZ joined. Judge GREGORY wrote an opinion concurring in part and dissenting in part.
OPINION
DUNCAN, Circuit Judge:
A jury convicted Paulette Martin, Learley Goodwin, Derrek Bynum, and Lavon Dobie (collectively “Appellants”) of various drug related offenses. As part of their sentences, the district court ordered Appellants to forfeit assets connected to their drug crimes pursuant to 21 U.S.C. § 853.[1] On appeal, Appellants seek vacature of the district court’s orders of forfeiture.[2] For the reasons that follow, we affirm.
*304 I.
A.
This case involves a large drug trafficking operation that supplied drugs throughout the District of Columbia, Maryland, and Virginia.[3] On May 5, 2004, a grand jury indicted Appellants on numerous charges relating to their participation in the drug trafficking operation. Authorities arrested Appellants on June 1, 2004. Upon, and subsequent to, the arrests, the government seized various assets belonging to Appellants pursuant to civil forfeiture warrants issued under 18 U.S.C. § 981 and initiated civil forfeiture proceedings.
On January 19, 2005, a grand jury handed down a fourth superseding indictment against Appellants that included criminal forfeiture allegations against Appellants’ assets. Thus, by January 2005, the government was pursuing both civil and criminal forfeiture of the same property.
Martin challenged the civil forfeiture of her assets on February 22, 2005, by filing a claim with the U.S. Department of Customs and Border Protection. The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983 (“CAFRA”), creates a process by which a claimant can challenge the civil forfeiture of assets in which she has an interest. CAFRA provides that when such a claim is made, a 90-day clock begins to run. Before the expiration of that period, the government must do one of three things: (1) “file a [civil] complaint for forfeiture,” (2) “obtain a criminal indictment containing an allegation that the property is subject to forfeiture[] and take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute,” or (3) “return the property.” 18 U.S.C. § 983(a)(3)(B) (emphasis added). If the government fails to complete one of these three steps before the 90 days expires, it is required to “promptly release the property.” Id.
After waiting several months for the government to take action, Martin filed a motion with the district court for “Prompt Return of Property Pursuant to Federal Rule of Criminal Procedure 41(g).”[4] Martin asserted that she timely filed a claim on February 22, 2005, and that the government failed to complete any of the three actions listed in § 983(a)(3)(B) within 90 days.[5] Martin contended that the government’s continued possession of her property despite its failure to act violated § 983(a)(3)(B).
In response to Martin’s motion, the government obtained criminal seizure warrants[6] for Martin’s assets based on the *305 forfeiture allegations in the fourth superseding indictment. The district court denied Martin’s Rule 41(g) motion, holding that Martin’s February 22 claim was untimely and, alternatively, that the government’s obtaining criminal seizure warrants mooted her motion.
B.
Appellants’ trial began on June 6, 2006. On August 31, 2006, a jury convicted Appellants on various charges related to their participation in the drug trafficking operation. Subsequent to Appellants’ convictions, post-trial forfeiture proceedings took place.
Beginning on November 21, 2006, the district court held two forfeiture hearings, taking evidence regarding the connection between the crimes for which Appellants were convicted and the property for which the government sought forfeiture. After the second hearing on December 19, 2006, the district court stated:
I have considered the testimony ... as well as the arguments of counsel [and] I conclude that the government’s preliminary forfeiture order is fully supported by the evidence at trial and ... the evidence presented to me at the prior proceeding on forfeiture in this case.
J.A. 530. The district court referred to the proposed order submitted by the government and noted that the parties had agreed to a minor change in that order concerning joint and several liability. The district court then told the government lawyer, “[I]f you will prepare a modified order that addresses [joint and several liability], I will be glad to enter the order .... I see no reason why not to proceed to the execution of a modified order.” J.A. 532. No one objected to this delay in entering the forfeiture order.
On that same day, immediately following the forfeiture hearing, the district court sentenced Appellants. Although the district court did not mention forfeiture in handing down each individual sentence, no one objected to the district court’s omission.
Between January 5, 2007, and January 16, 2007, the court entered its judgments as to Appellants. The government delivered its modified order for preliminary forfeiture to the district court on January 19, 2007, and the district court entered the order that day. On June 14, 2007, the district court issued a final order of forfeiture but did not amend the judgments to include that order.
Almost three years later, on April 15, 2010, Appellants filed a motion in the district court to vacate the prior criminal forfeiture orders and to return all forfeited property. Appellants argued that the district court missed the deadline to finalize forfeiture as set forth in Federal Rule of Criminal Procedure 32.2, and therefore lost jurisdiction to enter the forfeiture orders. The district court denied Appellants’ motion and amended the judgments to include the final order of forfeiture. This appeal followed.
II.
On appeal, Appellants challenge the criminal forfeiture of their property. Martin individually argues that the government’s pre-trial violation of the civil forfeiture statute rendered invalid its later criminal forfeiture.[7] In addition, Appel *306 lants collectively argue that the district court was without jurisdiction to order the criminal forfeiture of their property after their sentencings and the entry of judgments. In criminal forfeiture proceedings,[8] we review the district court’s findings of fact for clear error and the district court’s legal interpretations de novo. United States v. Morgan, 224 F.3d 339, 342 (4th Cir.2000). We consider each challenge in turn.
A.
We first consider Martin’s argument that the government’s pre-trial actions with respect to her property violated the civil forfeiture statute, thereby rendering the later criminal forfeiture of the property invalid. Martin argues that the district court erred both in holding that her claim was untimely and in holding that the government’s attainment of criminal seizure warrants mooted her challenge to its unlawful possession of her property. As a remedy for the government’s illegal seizure, Martin seeks the vacature of the subsequent criminal forfeiture of her property.[9]
Even assuming, without deciding, that the government seized Martin’s property illegally, we cannot grant the remedy — the vacature of the property’s later criminal forfeiture — that she seeks. The illegal seizure of property does not immunize that property from forfeiture as long as the government can sustain the forfeiture claim with independent evidence. See, e.g., United States v. Pierre, 484 F.3d 75, 87 (1st Cir.2007); see also INS v. Lopez-Mendoza, 468 U.S. 1032, 1039-40, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (noting that, just as an unlawful arrest does not result in the suppression of the “body” of the defendant in a criminal proceeding, the unlawful seizure of property does not result in the suppression of that property in a forfeiture proceeding). Here, Martin does not dispute that the evidence produced by the government, independent of the property, was sufficient to justify the criminal forfeiture. We therefore reject Martin’s challenge.
B.
We next consider Appellants’ argument that the district court was without jurisdiction to order the criminal forfeiture of their property after sentencing and the entry of judgments.
Criminal forfeiture is part of a defendant’s sentence. Libretti v. United States, 516 U.S. 29, 38-39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995). The procedure used to effect criminal forfeiture is set *307 forth in Rule 32.2. First, the government must include a forfeiture allegation in the indictment against the defendant. Fed. R.Crim.P. 32.2(a). After conviction, the government must establish a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence. Id. at 32.2(b)(1)(A).[10] If the government satisfies its burden, the district court enters a preliminary order of forfeiture. Id. 32.2(b)(2). Rule 32.2, as it existed at the time of Appellants’ sentencings,[11] provided that, “[a]t sentencing ... the order of forfeiture becomes final as to the defendant and must be made a part of the sentence and be included in the judgment.” Fed. R.Crim. Pro. 32.2(b)(3) (2004 version) (emphasis added).
Appellants correctly note that the district court neither referenced forfeiture in sentencing Appellants, nor included final orders of forfeiture in their judgments. In fact, the district court failed to enter the preliminary order of forfeiture until after it entered judgments and did not enter a final order of forfeiture until months later. Appellants argue that by missing the deadline set in Rule 32.2, the district court lost jurisdiction to enter orders of forfeiture and to amend the judgments to include the orders of forfeiture.
Although Rule 32.2, as it existed in 2004, required a district court to finalize forfeiture orders at sentencing and include them in a final judgment, it did not set forth the consequences that would flow from missing that deadline. The Supreme Court, however, has recently provided guidance in an analogous context. Following this guidance, we conclude that missing the deadline set in Rule 32.2 does not deprive a district court of jurisdiction to enter orders of criminal forfeiture so long as the sentencing court makes clear prior to sentencing that it plans to order forfeiture.
In Dolan v. United States, — U.S. -, 130 S.Ct. 2533, 177 L.Ed.2d 108 (2010), the Court examined a statute that set forth a deadline without specifying a consequence, and provided an analytical construct that is applicable here. There, the district court ordered the defendant, as part of his sentence, to pay restitution to the victim of his crime. Id. at 2537. The governing statute provided, “the court shall set a date for the final determination of the victim’s losses, not to exceed 90 days after sentencing.” 18 U.S.C. § 3664(d)(5). It was undisputed both that the defendant was on notice that the district court would order restitution and that the district court missed the deadline to order restitution and failed to include an order of restitution in the defendant’s judgment. Dolan, 130 S.Ct. at 2538.
Dolan established three categories in which to consider statute- and rule-based deadlines depending on the deadline’s purpose, as evidenced by the statute or rule’s language and context.[12] Id. at 2538-39. The first, a “jurisdictional condition,” has the strictest consequence: “The expiration of a ‘jurisdictional’ deadline prevents the court from permitting or taking the action to which the statute attached the deadline. The prohibition is absolute. *308 The parties cannot waive it, nor can a court extend that deadline for equitable reasons.” Id. at 2538. This type of deadline is unlikely to be inferred when a statute or rule fails to specify any consequence for noncompliance. See id. at 2539 (finding that the lack of a specified consequence weighs against imposing a coercive sanction). Examples of jurisdictional conditions include the deadlines for filing appeals. See, e.g., Bowles v. Russell, 551 U.S. 205, 209-10, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007).
The second category of deadline, a “claims-processing rule,” “do[es] not limit a court’s jurisdiction, but rather regúlatelas] the timing of motions or claims brought before the court.” Dolan, 130 S.Ct. at 2538. No sanction is applied for missing this type of deadline “[u]nless a party points out to the court that another litigant has missed such a deadline.” Id. An example of a claims-processing rule is the deadline for filing a motion for a new trial in a criminal case. See, e.g., Eberhart v. United States, 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam).
The third category of deadline, a “time-related directive,” is the most forgiving. A time-related directive keeps a process moving by creating a deadline “that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed.” Dolan, 130 S.Ct. at 2538.
The Dolan court focused on six aspects of the deadline created by the restitution statute in concluding that it is a “time-related directive.” First, the deadline, even though it contains the word “shall,” does “not specify a consequence for noncompliance.” Id. at 2539 (internal quotations omitted). Second, the substantive purpose of the restitution statute is to aid victims of crime, rather than provide some protection for defendants. Id. Third, the statute’s deadline “is primarily designed to help victims of crime secure prompt restitution rather than to provide defendants with certainty as to the amount of their liability.” Id. Fourth, “depriving the sentencing court of the power to order restitution would harm those—the victims of crime—who likely bear no responsibility for the deadline’s being missed and whom the statute also seeks to benefit.” Id. at 2540. Fifth, the Court had “previously interpreted similar statutes similarly.” Id. Finally, in the case of restitution, “the defendant normally can mitigate any harm that a missed deadline might cause.” Id. at 2541.
Considering the facts before us through the lens of Dolan, we conclude that Rule 32.2(b)(3), as it then existed, established a time-related directive.[13] First, like § 3664(d)(5), the 2004 version of Rule 32.2(b)(3)—although it used the word *309 “must” — did not specify a consequence for noncompliance. Second, the substantive purpose of criminal forfeiture is not to provide protection for defendants but to deprive criminals of the fruits of their illegal acts and deter future crimes. Cf. United States v. Ben-Hur, 20 F.3d 313, 319 (7th Cir.1994) (“[T]he purpose behind criminal forfeiture under section 853 is not just to sanction illegal conduct, but also to strip drug dealers of their economic power.”). Third, there is no indication that the purpose of the deadline set in Rule 32.2 is to provide defendants with certainty as to the amount of their liability. Fourth, because proceeds from forfeiture may go to victims of crime,[14] preventing forfeiture based on the failure to meet the Rule 32.2 deadline would often harm those who likely bear no responsibility for the deadline’s being missed and whom the statute also seeks to benefit. Fifth, as demonstrated by Dolan, the Court has previously interpreted similar statutes similarly. Finally, Appellants could have mitigated any harm that the missed deadline might have caused by objecting at their respective sentencings to the lack of finality as to the forfeiture orders. See Dolan, 130 S.Ct. at 2541. They failed to do so.
The relevant language of the current Rule 32.2 further supports our conclusion that this deadline is not a jurisdictional condition. It now provides that, “[t]he court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing.” Rule 32.2(b)(4)(B) (emphasis added). As the Advisory Committee notes, the change in the rule was not one of substance, but was instead intended “to clarify what the district court is required to do at sentencing. ...” Fed.R.Crim.P. 32.2 advisory committee’s notes (2009 amendment). This clarification emphasizes that the purpose of the deadline is not to create a coercive sanction, but to ensure that a defendant is on notice as to all aspects of his sentence, including forfeiture.
Our colleague’s comprehensive dissent notwithstanding, there is no dispute that Appellants were fully aware of both the pending forfeiture itself and, beyond even the facts of Dolan, the exact amount. Notably, Appellants themselves do not— and indeed could not — argue that they were caught off-guard. The district court held multiple, comprehensive hearings on forfeiture, in which both the fact of liability and the amount were determined. See J.A. 364-461, 480-532. The district court made clear at the end of the final forfeiture hearing — a mere minutes[15] prior to sentencing Appellants — that it intended to enter the forfeiture order.’ Appellants lack of surprise is further evidenced by the fact that they did not challenge the forfeiture until almost three years after the district court entered the final order of forfeiture.
Accordingly, because the Rule 32.2 deadline, as it then existed, is most persuasively understood as a time-related directive rather than a jurisdictional condition, and because Appellants were indisputably on notice at the time of sentencing that the district court would *310 enter forfeiture orders, we refuse to vacate the district court’s tardy forfeiture orders.
III.
For the foregoing reasons, we affirm the criminal forfeiture of Appellants’ assets.

AFFIRMED

. These assets included over $400,000 in currency from accounts held by Appellants, a Mercedes automobile owned by Martin, and several million dollars representing drug proceeds.

. Appellants made identical challenges to the criminal forfeiture orders in a separately filed appeal under Case No. 07-4059. The only difference between this appeal and the appeal in 07-4059 is that in 07-4059, Dobie joined *304 appeal of the criminal forfeiture orders, whereas she does not so join in this appeal. We dispose of all challenges to the criminal forfeiture orders in this opinion.

. For a more thorough treatment of the facts surrounding this drug operation, see the opinion in Case No. 07-4059 and United States v. Johnson, 587 F.3d 625 (4th Cir.2009).

. Rule 41(g) states in relevant part: “A person aggrieved ... by the deprivation of property may move for the property's return.” Fed.R.Crim.P. 41(g).

. Martin argued that, although the government had obtained an indictment with forfeiture allegations before the deadline, it had not completed the step by "tak[ing] the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute.” The government had also failed to file a complaint for forfeiture or return the property.

.Martin challenges the validity of these criminal seizure warrants, which were issued pursuant to 21 U.S.C. § 853(f). Section 853(f) allows the issuance of such warrants if, inter alia, "the court determines that there is probable cause to believe ... that [a protective order] under subsection (e) of this section may not be sufficient to assure the availability *305 of the property for forfeiture.” Martin asserts that the district court erred in finding that a protective order under § 853(e) would not have been sufficient to assure the availability of her property. We have considered this argument and reject it.

. As part of this argument, Martin claims that the unlawful possession of the property *306 amounted to an illegal seizure in violation of the Fourth Amendment. As a result, in addition to not being subject to forfeiture, Martin argues, the property also should have been excluded as evidence from her trial. We disagree. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.” Herring v. United States, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). In contrast, the government’s error in this instance, if any, "ar[ose] from nonrecurring and attenuated negligence [and] is thus far removed from the core concerns that led [the Court] to adopt the [exclusionary] rule in the first place.” Id.

. Although the attempted civil forfeiture of Martin’s property plays a role in our analysis, because the government never completed the civil forfeiture, our review is limited to the ultimate criminal forfeiture of her property.

. Martin does not seek monetary damages. A person whose property has been improperly held by the government generally can sue the government for damages pursuant to the Federal Tort Claims Act. See 28 U.S.C. § 2680(c). Such a remedy is unavailable, however, as to property, like Martin's, that is ultimately forfeited. Id. at § 2680(c)(2).

. The preponderance standard is set forth in case law, not the statute. See, e.g., United States v. Smith, 966 F.2d 1045, 1050-53 (6th Cir.1992).

. The rule was redrafted in 2009.

. Contrary to the dissent’s suggestion, post at 310, the Court did not narrowly frame its decision in Dolan around the issue of restitution. Instead, the Court in Dolan set forth broad guidance for courts faced with these circumstances to determine the consequence of missed deadlines. See 130 S.Ct. at 2537 (broadly noting, in the first sentence of the opinion, “This case concerns the remedy for missing a statutory deadline”).

. The dissent argues that this case is distinguishable from Dolan because, unlike in Dolan, this case presents not only the missing of a statutory deadline, "but also the elapsing of the timeframe in which a court may amend a sentence” under Rule 35. Post, at 311. We believe this a misreading of Dolan. Although the dissent is correct that all that was left for district court to do in Dolan was to fill in the amount of restitution, this “fill in the blank” is no less an amendment of a sentence than what happened in this case. Indeed, here the only blank left to be filled was a provision on joint and several liability, a change to which Appellants consented. J.A. 504, 518, 520, 532. Likewise, assuming the dissent is correct that it was not error under Rule 35 for the district court in Dolan to miss the statutory deadline governing restitution, it was similarly not error under Rule 35 for the district court here to make an almost identical mistake, missing the deadline governing forfeiture. Accordingly, we believe Dolan is closely analogous to these circumstances and thus compels our decision here.

. See 21 U.S.C. § 853(1) ("With respect to property ordered forfeited under this section, the Attorney General is authorized to ... take any other action to protect the rights of innocent persons which is in the interest of justice. ...”).

. From the record, it appears the time between the district court unequivocally stating that it intended to enter — after a minor change — the forfeiture order — which was presented to it by the government, with copies given to Appellants — and the beginning of the individual sentencings was approximately 32 minutes. See J.A. 532, 533, 543.